UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

IONA SCARVILLE,

                              Plaintiff,

v.                                                          1:21-CV-0807
                                                            (GTS/CFH)
LIVING RESOURCES CORPORATION,

                              Defendant.
_____

APPEARANCES:                                          OF COUNSEL:

IONA SCARVILLE
  Plaintiff, *Pro se*
45 Pennsylvania Ave.
Albany, NY 12206

LIVING RESOURCES CORPORATION               SANJEEVE K. DeSOYZA, ESQ.
  Defendant                                                NIHLA F. SIKKANDER, ESQ.
22 Corporate Woods Blvd., Suite 501
Albany, NY 12211

GLENN T. SUDDABY, United States District Judge

## <u>DECISION and ORDER</u>

Currently before the Court, in this employment discrimination action filed by Iona

Scarville ("Plaintiff") against Living Resources Corporation ("Defendant"), is Defendant's

motion to dismiss Plaintiff's Complaint for failure to state a claim pursuant to Fed. R. Civ. P.

12(b)(6). (Dkt. No. 8.) For the reasons set forth below, Defendant's motion is granted.

## I.      RELEVANT BACKGROUND

### A.  Plaintiff's Complaint and Relevant Procedural History

Generally, liberally construed, Plaintiff's Complaint filed on July 15, 2021, asserts the

following eight claims based on Defendant's termination of Plaintiff's employment and its

alleged failure to rehire her: (1) a claim for discrimination under the Americans with Disabilities Act ("ADA") based on Plaintiff's termination; (2) a claim for discrimination under the New York State Human Rights Law ("NYSHRL") based on Plaintiff's termination; (3) a claim for discrimination under the ADA based on Defendant's alleged failure to rehire Plaintiff; (4) a claim for discrimination under the NYSHRL based on Defendant's alleged failure to rehire Plaintiff; (5) a claim for failure to accommodate Plaintiff's alleged disability under the ADA; (6) a claim for failure to accommodate Plaintiff's alleged disability under the NYSHRL; (7) a claim for retaliation under the ADA; and (8) a claim for retaliation under the NYSHRL.[1] (Dkt. No. 1.)

### B.  Summary of Parties' Briefing on Defendant's Motion to Dismiss

Generally, in support of its motion to dismiss, Defendant sets forth eight arguments. (Dkt. No. 8-1.)

First, Defendant argues that Plaintiff fails to state a claim of disability discrimination under the ADA. (*Id.* at 9-12.) More specifically, Defendant argues that Plaintiff has not sufficiently pled facts showing that she suffers from a "disability," as defined by the ADA. (*Id.* at 9-10 [quoting Dkt. No. 1, at ¶¶ 17, 18].) Defendant argues that, despite Plaintiff alleging that a doctor diagnosed her with five medical conditions at an unspecified time, the remainder of Plaintiff's Complaint refers to an unspecified "medical condition" or "legally-protected

---

[1]     Of these eight claims, Plaintiff's Complaint specifically sets forth only her claim for discrimination under the ADA and her claim for discrimination under the NYSHRL. (Dkt. No. 1, at 7-8.) However, the Court's review of Plaintiff's allegations in her Complaint (which comports with Defendant's review of those allegations) indicate she seeks relief on the additional six claims. (Dkt. No. 8-1, at 9 [noting that Plaintiff "vaguely alludes" to these additional claims in her Complaint].) *See also Parfitt Way Mgmt. Corp. v. GSM by Nomad, LLC*, 17-CV-0299, 2018 WL 3118264, at *7, n. 5 (N.D.N.Y. June 25, 2018) (Suddaby, C.J.) ("The Court notes that all complaints . . . must be liberally construed.") (citing Fed. R. Civ. P. 8(e)).

disability" in the singular form and never specifies which medical condition caused her absence from work. (*Id.* at 10.) Defendant also argues that Plaintiff fails to allege that any medical condition substantially limited one or more of her major life activities. (*Id.*) Defendant further argues that Plaintiff's Complaint does not contain any factual allegations plausibly suggesting whether she could perform the essential functions of her job (with or without reasonable accommodation), and that Plaintiff's allegation that she "planned to return [to work] . . . as soon as medically possible" does not show that she could perform the essential functions of her job upon her return. (*Id.* at 11-12.) Defendant argues that Plaintiff's Complaint alleges that, two months *after* her termination, Plaintiff's doctor imposed an indefinite 50-pound lifting restriction, but that her Complaint is silent as to whether she could perform the essential functions of her position despite the restriction. (*Id.* at 12.) Defendant finally argues that Plaintiff fails to include any factual allegations in her Complaint that give rise to an inference of discriminatory animus. (*Id.*)

Second, Defendant argues that Plaintiff fails to state a claim for failure to accommodate under the ADA. (*Id.* at 13-15.) More specifically, Defendant argues that Plaintiff's Complaint does not include factual allegations plausibly suggesting the following three elements: (1) that Plaintiff had a disability; (2) that her alleged requirement to take a leave of absence due to a medical condition sufficiently placed Defendant on notice that (a) Plaintiff had a disability, and (b) Defendant was required to make a reasonable accommodation; and (3) that Defendant refused to provide Plaintiff with her requested reasonable accommodations. (*Id.* at 13-14.)

Third, Defendant argues that Plaintiff fails to state a claim for failure to rehire under the ADA. (*Id.* at 15-16.) More specifically, Defendant argues that Plaintiff does not allege that she

3

applied and was qualified for a vacant position for which Defendant was actively looking for applicants. (*Id.* at 15.)

Fourth, Defendant argues that Plaintiff fails to state a claim of disability discrimination under the NYSHRL. (*Id.* at 16-18.) More specifically, Defendant argues that, even under the NYSHRL's broader definition of "disability," Plaintiff fails to sufficiently allege that her undisclosed "medical condition" constitutes a covered disability. (*Id.* at 17.) Defendant further argues that Plaintiff did not plead factual allegations plausibly suggesting the remaining elements of her prima facie case of discrimination under the NYSHRL. (*Id.* at 17-18.)

Fifth, Defendant argues that Plaintiff fails to state a claim for failure to accommodate under the NYSHRL. (*Id.* at 18-19.) More specifically, Defendant argues that Plaintiff does not allege that she requested a specific reasonable accommodation, and any alleged request for indefinite leave is unreasonable as a matter of law. (*Id.*) Defendant also argues that Plaintiff fails to sufficiently allege that Defendant denied her a reasonable accommodation. (*Id.* at 19.)

Sixth, Defendant argues that Plaintiff fails to state a claim for failure to rehire under the NYSHRL. (*Id.* at 20.) More specifically, Defendant argues that Plaintiff does not allege that she applied and was qualified for an open position for which Defendant was actively seeking applicants, and that her conclusory allegation that she was treated differently than others does not cure these pleading defects. (*Id.*)

Seventh, Defendant argues that Plaintiff fails to state a claim of retaliation under the ADA or NYSHRL. (*Id.* at 20-22.) More specifically, Defendant argues that Plaintiff does not allege that she engaged in protected activity at any time during her employment. (*Id.* at 21.) Defendant further argues that Plaintiff does not allege that Gloria Bailey (i.e., the individual to

whom Plaintiff allegedly complained about discrimination) took any retaliatory action against Plaintiff, or that Bailey was a supervisor who had any authority to make decisions with respect to Plaintiff. (*Id.*) Defendant argues that Plaintiff never alleges that any of the supervisors she mentioned in her Complaint were aware that Plaintiff complained to Bailey. (*Id.* at 21-22.)

Eighth, Defendant argues that, if the Court dismisses Plaintiff's ADA claims, it should decline supplemental jurisdiction over Plaintiff's NYSHRL claims. (*Id.* at 22.)

Plaintiff has not responded to the motion, and the deadline by which to do so has expired. (*See generally* Docket Sheet.)

## II.   RELEVANT PROCEDURAL LEGAL STANDARDS

It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cnty.*, 549 F. Supp. 2d 204, 211, nn. 15-16 (N.D.N.Y. 2008) (McAvoy, J., adopting Report-Recommendation on *de novo* review).

Because such dismissals are often based on the first ground, some elaboration regarding that ground is appropriate.  Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2) (emphasis added).  In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal." *Jackson*, 549 F. Supp. 2d at 212, n. 20 (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513-514 (2002)).  On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Id.* at 212, n.17 (emphasis added).[2]

The Supreme Court has explained that such *fair notice* has the important purpose of "facilitat[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court.  *Id.* at 212, n.18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F. Supp. 2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases).  For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003).  "As a result, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet this liberal notice pleading standard." *Rusyniak,* 629 F. Supp. 2d at 214; *Ashcroft v. Iqbal*, 556 U.S. 662, 677-83, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007).  In doing so, the

---

[2]     *Accord, Flores v. Graphtex*, 189 F.R.D. 54, 55 (N.D.N.Y. 1999) (Munson, J.); *Hudson v. Artuz*, 95-CV-4768, 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998); *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y.1995) (McAvoy, C.J.).

Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 1968-69.  Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim.  *Id*. at 1965-74.  The Court explained that, although this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]."  *Id*. at 1965.  More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true.  *Id*.

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 129 S. Ct. at 1949 (2009).  "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . .  [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief."  *Id.* at 1950 (internal quotation marks and citations omitted).  However, although the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id*., it "does not impose a probability requirement."  *Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to

relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice."  *Iqbal*, 129 S. Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice.  *Id.* (internal citations and alterations omitted).  Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id.* (citations omitted).

This pleading standard applies even to *pro se* litigants. While the special leniency afforded to *pro se* civil rights litigants somewhat loosens the procedural rules governing the form of pleadings (as the Second Circuit has observed), it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Fed. R. Civ. P. 8, 10, and 12.[3] Rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in Fed. R. Civ. P. 8, 10, and 12 are procedural rules that even *pro se* civil rights plaintiffs must follow.[4] Stated more simply, when a plaintiff is proceeding *pro se*, "all normal rules of pleading are not absolutely suspended." *Jackson,* 549 F. Supp. 2d at 124, n. 28 (citations omitted).[5]

---

[3]      *See Vega v. Artus*, 610 F. Supp. 2d 185, 196 & nn. 8-9 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases); *Rusyniak*, 629 F. Supp. 2d at 214 & n. 34 (citing Second Circuit cases).

[4]      *See Rosendale v. Brusie*, 374 F. App'x 195, 196 (2d Cir. 2010) ("[A]lthough the courts remain obligated to construe a pro se complaint liberally,  . . . the complaint must contain sufficient factual allegations to meet the plausibility standard."); *Vega*, 610 F. Supp. 2d 196, n. 10 (citing Supreme Court and Second Circuit cases); *Rusyniak*, 629 F. Supp. 2d at 214 & n. 34 (citing Second Circuit cases).

[5]      It should be emphasized that Fed. R. Civ. P. 8's plausibility standard, explained in *Twombly*, was in no way retracted or diminished by the Supreme Court's decision (two weeks later) in *Erickson v. Pardus*, in which (when reviewing a pro se pleading) the Court stated,

Lastly, "[w]here a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein, the non-moving party's failure to file or serve any papers as this Rule requires shall be deemed as consent to the granting or denial of the motion, as the case may be, unless good cause is shown." N.D.N.Y. L.R. 7.1(a)(3); *Rusyniak*, 2009 WL 3672105, at *1, n. 1 (collecting cases); *Este-Green v. Astrue*, 09-CV-0722, 2009 WL 2473509, at *2 & nn. 2, 3 (N.D.N.Y. Aug. 7, 2009) (Suddaby, J.) (collecting cases).

## III.   ANALYSIS

### A.   Whether the Court Should Grant Defendant's Motion to Dismiss Plaintiff's Complaint

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 8-1.) To those reasons, the Court adds the following analysis, which is intended to supplement, and not to supplant, Defendant's reasoning.

#### 1.   Plaintiff's ADA Disability Discrimination Claim Based on Her Termination

The ADA prohibits covered entities from discriminating against qualified individuals on

---

"*Specific* facts are not necessary" to successfully state a claim under Fed. R. Civ. P. 8(a)(2). *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) (emphasis added). That statement was merely an abbreviation of the often-repeated point of law—first offered in *Conley* and repeated in *Twombly*—that a pleading need not "set out in *detail* the facts upon which [the claim is based]" in order to successfully state a claim. *Twombly*, 127 S. Ct. at 1965, n. 3 (citing *Conley*, 355 U.S. at 47) (emphasis added). That statement did not mean that all pleadings may achieve the requirement of "fair notice" without ever alleging any facts whatsoever. Clearly, there must still be enough fact set out (however set out, whether in detail or in a generalized fashion) to raise a right to relief above the speculative level to a plausible level. *See Rusyniak*, 629 F. Supp. 2d at 214 & n. 35 (explaining holding in *Erickson*).

the basis of disability. 42 U.S.C. § 12112(a). "To evaluate a claim for discrimination under the ADA, the familiar burden-shifting analysis established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L.Ed.2d 688 (1973) applies." *Clark v. Jewish Childcare Ass'n, Inc.*, 96 F. Supp. 3d 237, 248 (S.D.N.Y. 2015). Under this framework, Plaintiff bears the initial burden of proving her prima facie case of discrimination by a preponderance of the evidence. *Clark*, 96 F. Supp. 2d at 248. To do so, Plaintiff must show that "(1) [her] employer is subject to the ADA; (2) [she] was disabled within the meaning of the ADA; (3) [she] was otherwise qualified to perform the essential functions of [her] job; and (4) [she] suffered adverse employment action because of [her] disability." *Id.* (internal quotation marks omitted); *Beshaw v. MVP Serv. Corp.,* 21-CV-0584, 2022 WL 4094451, at *3 (N.D.N.Y. Sept. 7, 2022) (Sharpe, J.).

The ADA defines "disability" as "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1)(A). "'Major life activities are generally those activities that are of central importance to daily life,'" and can include, but are not limited to, caring for oneself, eating, sleeping, concentrating, thinking, working, and neurological functions. *Payne v. Cornell Univ.*, 18-CV-1442, 2021 WL 39684, at *11 (N.D.N.Y. Jan. 5, 2021) (Suddaby, C.J.), *aff'd*, 21-CV-0109, 2022 WL 453441 (2d Cir. Feb. 15, 2022) (quoting *Cody v. Cty. of Nassau*, 577 F. Supp. 2d 623, 638 (E.D.N.Y. 2008)); 42 U.S.C. § 12102(2)(A)-(B). "'To constitute a disability, an impairment must not merely affect a major life activity, it must substantially limit that activity.'" *Payne*, 2021 WL 39684, at *11 (quoting *Cody*, 577 F. Supp. 2d at 639). "Thus[,] a plaintiff who showed that . . . he had an impairment and that the impairment affected a major life activity would nonetheless be ineligible

to prevail under the ADA if the limitation of the major life activity was not substantial." *Id.*

(internal quotation marks omitted). The ADA definition of "disability" "shall be construed in

favor of broad coverage of individuals under [the Act] . . . ." 42 U.S.C. § 12102(4)(A).

In her Complaint, Plaintiff asserts the following three allegations regarding whether she

has a "disability," as defined by the ADA: (1) "[o]n April 24, 2020, Plaintiff was medically

required to take time off from work due to a medical condition"; (2) "[s]pecifically, Plaintiff's

doctor diagnosed her with systolic hear[t] failure, chest pain, cardiac murmur, hypertension, and

obesity"; (3) "[Plaintiff] suffered from a legally-protected disability." (Dkt. No. 1, at ¶¶ 16-18.)

Despite listing the medical conditions with which her doctor diagnosed her at an undisclosed

time, Plaintiff does not specify for which medical condition she was "medically required to take

time off from work"[6] and for which Defendant allegedly terminated her employment. (*Id.*)

Rather, throughout her Complaint, Plaintiff generally refers to her "medical condition" without

ever disclosing that it is one of the impairments she specifically listed. (*Id.* at ¶¶ 16, 21, 33.)

Without confirmation of the alleged "medical condition" to which Plaintiff refers throughout her

Complaint (and for which she alleges Defendant terminated her employment), the Court cannot

find that Plaintiff pled facts plausibly suggesting that the "medical condition" she refers to

constitutes a "disability" under the ADA.

Nor does Plaintiff's Complaint address whether the unidentified "medical condition"

"substantially limit[ed] one or more major life activities[,]" which is fatal to her claim. 42 U.S.C.

---

[6]     The Court also notes that it is unclear *when* Plaintiff "was medically required to take time
off from work due to [her] medical condition," because one paragraph of her Complaint alleges
that this occurred "[o]n April 24, 2020," and another paragraph states that her leave of absence
began "in March of 2020[.]" (Dkt. No. 1, at ¶¶ 16, 22.)

§ 12102(1)(A); *Morey v. Windsong Radiology Grp., P.C.*, 794 F. App'x 30, 32-33 (2d Cir. 2019)

(summary order) (affirming dismissal where the plaintiff did not allege the requisite facts to

show "how her disability 'substantially limits' her 'major life activities'"); *Dominelli v. North*

*Country Acad.*, 16-CV-0203, 2016 WL 6833992, at *3 (N.D.N.Y. Nov. 18, 2016) (D'Agostino,

J.) (finding the plaintiff had not sufficiently alleged the first element of her prima facie case

where she "merely ma[de] a general allegation that she is diabetic, but d[id] not specifically

allege which, if any, major life activities ha[d] been limited by her impairment"); *Schwartz v.*

*Comex*, 96-CV-3386, 1997 WL 187353, at *2 (S.D.N.Y. Apr. 15, 1997) ("While paranoid

thought disorder may be an impairment that meets the first element of the objective definition [of

disability], the plaintiff has failed to satisfy the second element because he has not alleged that he

is substantially limited in a major life activity.").

Plaintiff's Complaint also does not include any allegations regarding whether she could

perform the essential functions of her job, with or without reasonable accommodation. *See*

*Brown v. U.P.S. Incorp.*, 22-CV-0762, 2022 WL 4077775, at *3 (N.D.N.Y. Sept. 6, 2022)

(Sannes, J.) (finding the plaintiff failed to plead sufficient factual allegations to support the

"otherwise qualified" element of his prima facie case where his complaint did "not allege the

'essential functions' or 'fundamental job duties' of the Personal Seasonal Delivery Driver

position or that he was able to perform those functions"). In fact, Plaintiff's Complaint alleges

only that, two months *after* her termination,[7] Plaintiff provided letters to Defendant stating that

---

[7]     The date of Plaintiff's termination is not entirely clear from the Complaint, but at the latest, occurred on August 25, 2020. (Dkt. No. 1, at ¶ 19 ["On August 25, 2020, Defendant sent [Plaintiff] a letter terminating her employment as of *April* 24, 2020."] [emphasis added].)

she could return to work but with a 50-pound lifting restriction. (Dkt. No. 1, at ¶¶ 24-26.) Plaintiff does not allege what her duties were as a Direct Care Assistant (i.e., the role performed before her leave of absence and to which she hoped to return after that leave), nor how she would be able to perform this position with her newly imposed lifting restriction. (*Id.* at ¶¶ 15, 36-37.) Plaintiff's Complaint therefore does not contain sufficient factual support for the "otherwise qualified" element of her prima facie case.

Finally, Plaintiff's allegations regarding the nexus between her alleged disability and the adverse employment action (i.e., her termination) are conclusory, at best. *See Dollinger v. New York State Ins. Fund,* 14-CV-0908, 2016 WL 6833993, at *6 (N.D.N.Y. Nov. 18, 2016) ("Aside from entirely conclusory allegations, Plaintiff's second amended complaint fails to plausibly allege that he suffered an adverse employment action because of any alleged disability."); *Harvin v. Manhattan and Bronx Surface Transit Operating Auth.*, 767 F. App'x 123, 127 (2d Cir. 2019) (summary order). After stating that she took time off work due to her "medical condition," Plaintiff's Complaint includes the conclusory allegation that "Defendant terminated [her] employment because of her disability." (Dkt. No. 1, at ¶ 20.) At the end of her Complaint, Plaintiff also alleges that, but for her disability, "Defendant would not have treated [her] differently and would not have terminated her employment." (*Id.* at ¶ 48.) *See Pierce v. Fordham Univ., Inc.*, 692 F. App'x 644, 646 (2d Cir. 2017) (summary order) (finding the plaintiff did not sufficiently allege discriminatory animus where, "[o]ther than conclusory allegations, [she] point[ed] to no comparable [individuals] treated differently").

Apart from these conclusory allegations, Plaintiff provides no factual support for any alleged discriminatory animus, and therefore has not alleged facts plausibly suggesting the fourth

element of her prima facie case. *See Payne*, 2022 WL 453441, at *3 ("We agree with the district court that [the plaintiff] failed to raise an inference of discrimination because she failed to compare, let alone identify, a similarly situated employee . . . .") (internal quotation marks omitted); *Morren v. N.Y. Univ.*, 20-CV-10802, 2022 WL 1666918, at *17 (S.D.N.Y. Apr. 29, 2022) (dismissing the plaintiff's discrimination claim where he did not allege his discrimination claim under a disparate impact theory, nor did he allege sufficient factual allegations that "similarly situated non-Black or non-disabled employees were treated differently from [him]").

For these reasons, the Court grants Defendant's motion to dismiss with respect to Plaintiff's ADA disability discrimination claim based on her termination.

### 2. Plaintiff's NYSHRL Disability Discrimination Claim Based on Her Termination

The NYSHRL prohibits employers from discrimination on the basis of "age, race, creed, color, national origin, sexual orientation, military status, marital status, or disability . . . ." N.Y. Exec. Law § 291. The NYSHRL defines a "disability" as

> (a) a physical, mental or medical impairment resulting from anatomical, physiological, genetic or neurological conditions which prevents the exercise of a normal bodily function or is demonstrable by medically accepted clinical or laboratory diagnostic techniques or (b) a record of such an impairment or (c) a condition regarded by others as such an impairment, provided, however, that in all provisions of this article dealing with employment, the term shall be limited to disabilities which, upon the provision of reasonable accommodations, do not prevent the complainant from performing in a reasonable manner the activities involved in the job or occupation sought or held.

N.Y. Exec. Law § 292(21).

The elements of a NYSHRL discrimination claim are generally the same as those under the ADA, with one key difference: the NYSHRL has a broader definition of disability than does

the ADA because it does not require any showing that the disability substantially limits a major life activity. *Ugcatz v. U.P.S., Inc.*, 10-CV-0124, 2013 WL 1232355, at *14 (E.D.N.Y. Mar. 26, 2013); *see also Welch v. U.P.S., Inc.*, 871 F. Supp. 2d 164, 198 (E.D.N.Y. 2012) (noting that NYSHRL is not a "carbon copy of the ADA"). Rather, "[u]nder the NYSHRL . . . , Plaintiff need only prove that [s]he has a 'medically diagnosable impairment.'" *Ugcatz*, 2013 WL 1232355, at *14 (quoting *Attis v. Solow Realty Dev. Co.*, 522 F. Supp. 2d 623, 631-32 (S.D.N.Y. 2007)). Employment discrimination claims brought under the NYSHRL are also analyzed under the *McDonnell-Douglas* burden shifting framework. *Ben-Levy v. Bloomberg, L.P.*, 518 F. App'x 17, 18 (2d Cir. 2013) (summary order); *Razzano v. Remsenburg-Speonk Union Free Sch. Dist.*, No. 20-3718, 2022 WL 1715977, at *2 (2d Cir. May 27, 2022).

Despite the broader definition of "disability" under the NYSHRL, Plaintiff still has not sufficiently alleged that she was disabled because, as the Court addressed in Part III.A.1. of this Decision and Order, she does not allege which "medical condition" constituted the disability for which she took a leave of absence and for which Defendant allegedly terminated her employment. (Dkt. No. 1.) Additionally, as the Court addressed in Part III.A.1. of this Decision and Order, Plaintiff's Complaint does not contain sufficient factual allegations plausibly suggesting her ability to perform the essential functions of her role, with or without reasonable accommodation, or that Defendant terminated her employment "because of" her disability. *See Kinneary v. City of N.Y.*, 601 F.3d 151, 158 (2d Cir. 2010) (noting that the plaintiff "concede[d] that the same elements that must be proven to establish an ADA claim must also be demonstrated to prove claims under [the] NYSHRL" and that "§ 292(21) of the NYSHRL is parallel to the 'otherwise qualified' requirement of the ADA") (citing *Shannon v. New York City Transit Auth.,*

15

332 F.3d 95, 103-04 (2d Cir. 2003)); *Morren*, 2022 WL 1666918, at *17.

The Court therefore grants Defendant's motion to dismiss with respect to Plaintiff's NYSHRL disability discrimination claim based on her termination. *Stephens v. Shuttle Assocs., L.L.C.*, 547 F. Supp. 2d 269, 278 (S.D.N.Y. Apr. 10, 2008).

### 3. Plaintiff's ADA Disability Discrimination Claim Based on Defendant's Alleged Failure to Rehire Plaintiff

To the extent Plaintiff asserts an ADA discrimination claim regarding Defendant's alleged failure to rehire her,[8] this claim fails for the same reasons as her ADA discrimination claim regarding her termination. *See Crosby v. McDonald's of Guilderland, LLC*, 17-CV-1160, 2018 WL 2077884, at *8 (N.D.N.Y. May 2, 2018) (D'Agostino, J.) ("In order to establish a failure-to-rehire claim, a plaintiff must 'first establish a prima facie case of discrimination or retaliation . . . .'") (quoting *Yetman v. Capital Dist. Transp. Auth.*, 669 F. App'x 594, 595 (2d

---

[8]     The Court notes that it is possible for a plaintiff to allege that a defendant's failure to rehire was an adverse employment action taken in retaliation for the plaintiff's having engaged in protected activity. *See Crosby v. McDonald's of Guilderland, LLC*, 17-CV-1160, 2018 WL 2077884, at *8 (N.D.N.Y. May 2, 2018) (D'Agostino, J.). However, based on Plaintiff's Complaint, her retaliation claim addresses only her termination as the alleged adverse employment action. More specifically, Plaintiff's Complaint includes the following four allegations related to Defendant's alleged retaliation: (1) "Defendant's stated reasons for *terminating* [Plaintiff] . . . were nothing more than further discrimination and retaliation for [Plaintiff's] complaints of discrimination."; (2) "Defendant's *termination* of [Plaintiff] constitutes retaliation for [her] complaints of discrimination."; (3) "[I]n addition to discriminating against [Plaintiff], Defendant also subjected [Plaintiff] to illegal and ongoing retaliation involving all of the above-described conduct *up to and including her termination*."; and (4) "Plaintiff felt offended, disturbed, and humiliated by the blatantly unlawful and discriminatory and retaliatory *termination*[.]" (Dkt. No. 1, at ¶¶ 38, 40, 46, 47 [emphasis added].) Plaintiff does not allege that Defendant did not rehire her because it was retaliating against her for engaging in protected activity. (*See generally* Dkt. No. 1.) Therefore, in Parts III.A.3. and III.A.4. of this Decision and Order, the Court assesses whether Plaintiff sufficiently alleged discrimination claims based on Defendant's alleged failure to rehire and limits its analysis regarding her retaliation claims to her termination. *See, infra,* Part III.A.7. and III.A.8.

Cir. 2016)) (emphasis added). More specifically, as the Court addressed in Part III.A.1. of this

Decision and Order, Plaintiff has not alleged facts plausibly suggesting that she has a disability

covered by the ADA, or that she was "otherwise qualified" for the job at issue in this case (i.e.,

Direct Care Assistant). Further, although Plaintiff alleges that "there were open positions

identical to Plaintiff's position which the Defendant refused to give [her],"[9] her Complaint lacks

factual allegations showing that, "after [her] rejection, the position[s] remained open and

[Defendant] continued to seek applicants from persons of [Plaintiff's] qualifications." *Nader v.*

*ABC Television, Inc.*, 150 F. App'x 54, 56 (2d Cir. 2005) (summary order).

The Court accordingly grants Defendant's motion to dismiss with respect to Plaintiff's

ADA disability discrimination claim based on Defendant's alleged failure to rehire her.

### 4.  Plaintiff's NYSHRL Disability Discrimination Claim Based on Defendant's Alleged Failure to Rehire Plaintiff

Under the NYSHRL, a plaintiff may also assert disability discrimination claims based on

an alleged failure to rehire. *Yetman*, 669 F. App'x at 595 (2d Cir. 2016) (summary order); *Payne*,

2022 WL 453441, at *3.  However, for the reasons stated above in Part III.A.3. of this Decision

and Order, Plaintiff fails to sufficiently allege facts supporting this claim, and the Court

accordingly grants Defendant's motion to dismiss with respect to it.

### 5.  Plaintiff's ADA Failure-to-Accommodate Claim

The ADA imposes liability on employers for, *inter alia*, failing to make "reasonable

accommodations to the known physical or mental limitations of an otherwise qualified individual

with a disability who is an applicant or employee, unless such covered entity can demonstrate

---

[9]        (Dkt. No. 1, at ¶¶ 30, 37.)

that the accommodation would impose an undue hardship on the operation of the business of such covered entity[.]" 42 U.S.C. § 12112(b)(5)(A). Like disability discrimination claims, a failure-to-accommodate claim is subject to the *McDonnell-Douglas* burden shifting framework. *Dominelli*, 2016 WL 6833992, at \*2. A plaintiff makes out a prima facie case of disability discrimination arising from a failure to accommodate by establishing the following four elements: "(1) plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." *Payne*, 2021 WL 39684, at \*11 (internal quotation marks omitted).

Similar to her disability discrimination claims, Plaintiff's Complaint does not provide factual allegations plausibly suggesting to support that she is a "person with a disability under the meaning of the ADA" or that she is "otherwise qualified" to perform the essential functions of her job, as the Court addressed above in Part III.A.1. of this Decision and Order.

Further, because Plaintiff does not identify the "medical condition" that constitutes her disability, her Complaint also does not allege facts plausibly suggesting that she actually requested a reasonable accommodation. "'[G]enerally, it is the responsibility of the individual with a disability to inform the employer than an accommodation is needed.'" *Blundell v. Nihon Kohden Am.*, 15-CV-1503, 2017 WL 318842, at \*10 (N.D.N.Y. Jan. 23, 2017) (Suddaby, C.J.) (quoting *Graves v. Finch Pruyn & Co., Inc.*, 457 F.3d 181, 184 (2d Cir. 2006)). This rule does not apply where the disability is "obvious," "such that 'the employer knew or reasonably should have known that the employee was disabled.'" *Blundell*, 2017 WL 318842, at \*10 (quoting

*Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 135 (2d Cir. 2008)).

Plaintiff never alleges, even in a conclusory manner, that she requested a reasonable accommodation for her disability. (*See generally* Dkt. No. 1.) In fact, the only allegation in her Complaint regarding accommodations states that, "[a]t no point did Defendant attempt to engage with [Plaintiff] in any interactive process or to discuss in any way [Plaintiff's] return to work, or any possible accommodations regarding her disability." (*Id.* at ¶ 43.) Without knowing which medical condition Plaintiff alleges constituted a "disability" (and especially considering that the diagnoses she listed in her Complaint are not necessarily "obvious"),[10] the Court cannot determine whether Defendant should have reasonably known that she was disabled and engaged in the interactive process, even without her requesting an accommodation. *See also MacEntee v. IBM (Int'l Bus. Machs.)*, 783 F. Supp. 2d 434, 444 (S.D.N.Y. 2011) ("If [Plaintiff] needed an accommodation, it was her responsibility to bring that need to her employer's attention. By failing to provide medical documentation and failing to notify her supervisor of her unknowable limitations, IBM had no notice of her disability and was not given the opportunity to offer, or refuse, [her] reasonable accommodations."); *E.E.O.C. v. Yellow Freight Sys., Inc.*, 98-CV-2270, 2002 WL 31011859, at *23 (S.D.N.Y. Sept. 9, 2022) (highlighting that, "[o]nce the interactive process *has been initiated by the employee's request for accommodation*, the regulations contemplate that the employer" will engage in certain actions) (emphasis added).

Finally, even if the Court were to find that Plaintiff requested a reasonable accommodation, the allegations in her Complaint show that Defendant granted the

---

[10]      (*See* Dkt. No. 1, at ¶ 17 [stating that "Plaintiff's doctor diagnose[d] her with systolic hear[t] failure, chest pain, cardiac murmur, hypertension, and obesity"].)

accommodation during her employment. *See Jordan v. Forfeiture Support Assocs.*, 928 F. Supp. 2d 588, 608-09 (E.D.N.Y. 2013) (dismissing ADA failure to accommodate claim where the plaintiff's complaint did not contain "any allegations that [she] requested a reasonable accommodation or that [the defendant] refused to make such accommodation"). Read in the light most favorable to Plaintiff, her Complaint alleges as follows: (a) she was medically required to take time off from work due to a medical condition in approximately March or April of 2020; (b) during the time she was out of work, Plaintiff remained in contact with Defendant to inform them that "she was seeing her doctor regularly and planned to return to work as soon as medically possible"; (c) during her absence, no one informed her that she was required to submit a doctor's note stating when she was eligible to return to work; (d) Defendant terminated her employment on August 25, 2020; (e) Plaintiff provided Defendant with a return-to-work note from her doctor on October 20, 2020, and with another doctor's note regarding a 50-pound lifting restriction on October 22, 2020; and (f) Defendant did not rehire Plaintiff thereafter. (Dkt. No. 1.)

Based on these facts, Plaintiff alleges only two requested accommodations: (1) a leave of absence; and (2) a lifting restriction. (Dkt. No. 1, at ¶¶ 16, 21, 26.) Neither of these requests saves her claim, as currently pled. First, Defendant did initially provide Plaintiff with a leave of absence in March or April 2020, meaning it did not "refuse" to grant the accommodation as required by the fourth element of Plaintiff's prima facie case. Second, any alleged accommodation Plaintiff requested in October 2020 came two months *after* her termination, and therefore is not relevant to her failure-to-accommodate claim to the extent it relates to that alleged adverse employment action. *See Whalley v. Reliance Grp. Holdings, Inc.*, 97-CV-4018,

2001 WL 55726, at *8 (S.D.N.Y. Jan. 22, 2001) ("It also is an employee's responsibility to advise his employer not only of his alleged disability but about his need for assistance and to suggest a reasonable accommodation. *This he must do before the challenged job action is taken—not after*.") (internal quotation marks omitted and emphasis added).

For these reasons, the Court grants Defendant's motion to dismiss Plaintiff's ADA failure-to-accommodate claim.

### 6.   Plaintiff's NYSHRL Failure-to-Accommodate Claim

"Claims under the NYSHRL for a failure to accommodate are governed by the same legal standards as federal ADA claims." *McKenna v. Santander Inv. Secs., Inc.*, 21-CV-0941, 2022 WL 2986588, at *7 (S.D.N.Y. July 28, 2022) (citing *Fox v. Costco WholeSale Corp.*, 918 F.3d 65, 76 (2d Cir. 2019)); *Blundell*, 2017 WL 318842, at *10, n. 5. Therefore, Plaintiff's NYSHRL failure-to-accommodate claim cannot survive Defendant's motion to dismiss for the reasons set forth in Part III.A.5 of this Decision and Order. *See Fox*, 918 F.3d at 76 (finding that the plaintiff's state law clams under the NYSHRL were properly dismissed where it affirmed the plaintiff's dismissal of his ADA failure-to-accommodate claim, "[b]ecause NYSHRL claims are analyzed as ADA claims"); *Noll v. Int'l Bus. Machs. Corp.*, 787 F.3d 89, 94 (2d Cir. 2015).

### 7.   Plaintiff's ADA Retaliation Claim

The ADA makes it unlawful for an employer to "coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of . . . any right granted or protected by this chapter." 42 U.S.C. § 12203(b). The ADA further renders it unlawful for an employer to "discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or

participated in any manner in an investigation, proceeding, or hearing under this chapter." 42

U.S.C. § 12203(a). ADA retaliation claims are subject to the *McDonnell-Douglas* burden shifting

framework, and for Plaintiff to establish her prima facie case, she must allege factual support for

the following four elements: "'(1) [she] engaged in protected participation or opposition under

the ADA; (2) that the employer was aware of this activity; (3) that the employer took adverse

action against the plaintiff; and (4) that a causal connection exists between the protected activity

and the adverse action.'" *Payne*, 2021 WL 39684, at \*12 (quoting *Skinner v. City of Amsterdam*,

824 F. Supp. 2d. 317, 329 (N.D.N.Y. 2010) (Suddaby, J.)).

　　With respect to the first element, "[a]ctivities protected by the ADA include complaints

of ADA discrimination, including complaints on a good faith belief that the employer's actions

violated the ADA, and requests for reasonable accommodations." *Flieger v. E. Suffolk BOCES*,

693 F. App'x 14, 18 (2d Cir. 2017) (summary order) (citing *Weixel v. Bd. of Educ. of City of*

*N.Y.*, 287 F.3d 138, 149 (2d Cir. 2002) and *Weissman v. Dawn Joy Fashions, Inc.*, 214 F.3d 224,

234 (2d Cir. 2000)). In her Complaint, Plaintiff alleges in two separate paragraphs that

"Defendant's termination of [her] constitutes retaliation for [her] complaints of discrimination."

(Dkt. No. 1, at ¶¶ 38, 40.) Defendant is correct that the only complaint of discrimination that

Plaintiff alleges she made (i.e., her complaint to Gloria Bailey, Human Resources Generalist, that

"Defendant was firing her because of her medical condition") occurred "[o]n or about October

22, 2020"—two months *after* her termination. (*Id.* at ¶¶ 19, 31-34.) Therefore, Plaintiff has not

sufficiently alleged that a causal connection exists between this alleged protected activity and her

termination. *See also Jordan*, 928 F. Supp. 2d at 609 (finding that the plaintiff's alleged

complaint did not constitute protected activity where the plaintiff "did not complain about [the

defendant's] discriminatory conduct until the filing of her EEOC Charge, . . . long after her termination . . . ."); *Skinner*, 824 F. Supp. 2d at 332.

Plaintiff likewise cannot rely on requests for reasonable accommodation as her protected activity.[11] "[I]t is well established that seeking a reasonable accommodation for a disability constitute[s] a protected activity . . . even if plaintiff actually did not have a disability within the meaning of the ADA, so long as her belief that she was disabled when she requested the accommodation was reasonable and the request was made in good faith[.]" *Rieger v. Orlor, Inc.*, 427 F. Supp. 2d 105, 120 (D. Conn. 2006). However, as the Court addressed above in Part III.A.5 of this Decision and Order, Plaintiff has not alleged facts plausibly suggesting that she requested an accommodation or that Defendant knew (or should have known) of her disability so that it could engage in the interactive process, which undercuts her ability to rely on a request for accommodation as protected activity for her retaliation claim.

For these reasons, the Court grants Defendant's motion to dismiss with respect to Plaintiff's ADA retaliation claim.

### 8. Plaintiff's NYSHRL Retaliation Claim

Like the ADA, "[t]he NYSHRL makes it unlawful for an employer to retaliate against an employee because [s]he 'has opposed any practices forbidden under this article or because . . .

---

[11]     Although Plaintiff's Complaint appears to rely on her alleged complaint to Bailey as the "protected activity" for her retaliation claim, a subsequent paragraph in her Complaint states that, "in addition to discriminating against [Plaintiff], Defendant also subjected [her] to illegal and ongoing retaliation involving *all of the above-described conduct up to and including her termination*." (Dkt. No. 1, at ¶ 46 [emphasis added].) Therefore, out of an abundance of caution, the Court will address whether Plaintiff sufficiently alleged facts showing that Defendant retaliated against her for requesting reasonable accommodations.

[she] has filed a complaint, testified or assisted in any proceeding under this article.'" *Piligian v Ichan Sch. of Med. at Mount Sinai*, 17-CV-1975, 2020 WL 6561663, at *11-12 (S.D.N.Y. Apr. 7, 2020), *report and recommendation adopted sub nom. Piligian v. Icahn Sch. of Med. at Mount Sinai*, 490 F. Supp. 3d 707 (S.D.N.Y. 2020) (quoting N.Y. Exec. Law § 296(1)). Courts apply the same framework when analyzing ADA and NYSHRL retaliation claims. *Lewis v. Erie Cnty. Med. Ctr. Corp.*, 907 F. Supp. 2d 336, 349 (W.D.N.Y. Nov. 1, 2012) (citing *Weissman*, 907 F. Supp. 2d at 234). However, unlike the ADA, the NYSHRL does not include requests for reasonable accommodation as "protected activity." *See Taulbee v. D'Youville College*, 21-CV-0228, 2022 WL 363338, at *2 (W.D.N.Y. Jan. 11, 2022) (gathering cases supporting the point of law that the NYSHRL does not recognize a claim for retaliation based upon a request for a reasonable accommodation); *Piligian*, 2020 WL 6561663, at *11 ("[C]ourts have distinguished between requests for accommodation in the first instance, which do not constitute protected activity, and complaints about or opposition to the denial of such requests, which may constitute protected activity.").

As the Court described above in Part III.A.7. of this Decision and Order, Plaintiff has not sufficiently alleged that she engaged in protected activity, and the Court accordingly grants Defendant's motion to dismiss with respect to Plaintiff's NYSHRL retaliation claim.

### B.      Whether Plaintiff Should Be Granted Leave to Amend

After carefully considering the matter, the Court answers the question in the affirmative, for the reasons set forth below.

Pursuant to Fed. R. Civ. P. 15(a)(2), leave to amend a complaint should be freely given "[i]n the absence of any apparent or declared reason to not grant leave to amend[,] such as undue

delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies

by amendments previously allowed, undue prejudice to the opposing party by virtue of

allowance of the amendment, [or] futility of the amendment . . . ." *Foman*, 371 U.S. at 182.

"[W]here it appears that granting leave to amend is unlikely to be productive, . . . it is not an

abuse of discretion to deny leave to amend." *Manship v. T.D. Bank, N.A.*, 12-CV-0329, 2021 WL

981587, at *13-14 (N.D.N.Y. Mar. 16, 2021) (Suddaby, C.J.) (internal citations and quotation

marks omitted). "'[A]n opportunity to amend is not required where the defects in plaintiff's

claims are substantive rather than merely formal, such that any amendment would be futile.'"

*Manship*, 2021 WL 981587, at *13-14 (quoting *Sorrentino v. Barr Labs Inc.,* 09-CV-0591, 2010

WL 2026135, at *5 (N.D.N.Y. May 20, 2010)).

       In this case, although initially represented by counsel, Plaintiff now proceeds *pro se* and

has done so since before her opposition to Defendant's motion was due. (*See generally* Docket

Sheet.) Plaintiff's *pro se* status, along with the fact that she has not yet amended her Complaint,

support permitting leave to amend. *Dominelli,* 2016 WL 6833992, at *4 (granting *pro se* plaintiff

leave to amend her ADA claims). Further, because the deficiencies in Plaintiff's Complaint may

be merely formal, rather than substantive, leave to amend is appropriate. Fed. R. Civ. P. 15(a)(2);

*Foman*, 371 U.S. at 182.

       **ACCORDINGLY,** it is

       **ORDERED** that Defendant's motion to dismiss Plaintiff's Complaint for failure to state

a claim under Fed. R. Civ. P. 12(b)(6) (Dkt. No. 8) is **<u>GRANTED</u>**; and it is further

       **ORDERED** that Plaintiff's Complaint (Dkt. No. 1) shall be **<u>DISMISSED</u> with**

**prejudice** without further Order of the Court UNLESS, within **THIRTY (30) DAYS** of the

filing of this Decision and Order, Plaintiff files a motion for leave to file an Amended Complaint

correcting the pleading defects identified in this Decision and Order. Should Plaintiff file such

motion, it shall be reviewed by the undersigned.


Date:   September 21, 2022
        Syracuse, New York


Glenn T. Suddaby
U.S. District Judge

26